Good morning, Your Honors. May it please the Court. This case is on appeal because the trial court incorrectly determined that the common and commercial meaning of a wood screw is a thread-forming screw that can only be used to attach wood to wood or other fibrous material. In fact, a wood screw is any screw that is designed to anchor into wood or other resilient materials, regardless of the material that is being affixed to the wood. A wood screw can also have a cutting thread, as long as the screw is designed to cut or create threads into wood or other resilient materials. Now, I understand there's a lot of – we've got a record here and there are lots of definitions and references and all of this stuff thrown in, but I guess what seems to me a major difference between you and the other side and the Court of International Trade is you kind of are limiting it to what the screw is anchored in. Correct. And my question is, what is the strong basis in the record that that's the ground upon which we should decide this? Well, if you look at the screw itself and the structure of the screw, these types of screws are threaded for the bottom two-thirds of the shank. And so the material where the thread is actually being made is going to be the anchor material, which is here wood. It's indisputed that these screws are used to be anchored into wood, even when they're being used with other materials such as sheet metal or fiberboard and things of that nature, the bottom material is always the anchor material. And so when you have these screws where the bottom two-thirds of the thread – or excuse me, the bottom two-thirds of the shank are the part that is actually threaded, when you're looking as to what type of material the threading is actually creating female threads in, it's always going to be that anchor material. In fact, with the R4 screws, it has a second type of threading called CEE threading, which is directly above the W-cut threads, which make up the majority of the thread. Maybe I'm misunderstanding you, or maybe you misunderstood my lack of clarity, which is my question isn't whether you're right or wrong in terms of whether it's anchored in wood. My question is why that should be the determinative criteria. I think it should be the determinative criteria because that is what the definitions, the definitions all suggest. Joe Greenslade, who was the government's expert here, he is the head of the committee that writes the ANSI-ASME standards, explained that a wood screw is a screw that is designed to be anchored into wood and that it is really the anchor material that is the important material for what is defining what the screw is. I didn't see anything in any of the different dictionary definitions or the other source materials other than expert testimony that referred to anchored in wood. Am I missing something? No, I would agree with that, that there is not an explicit reference to the term anchoring. Instead, you see terms such as insertion, which I think can be substituted for the term current. The word anchoring is not explicitly used in these definitions. That being said, the definitions also do not explicitly reference the material that is being attached to the wood. The court is going to have to make a decision here as to what's more important. Is it going to be the anchor material or is it going to be the material that is being anchored to the wood? Yes, and on what basis are we supposed to It doesn't rely heavily. What it's anchored in doesn't seem to be the determinative factor other than some of the expert testimony that you cited, right? Again, as I said, I do agree partially with that. Again, the expert testimony did say that. I think that the dictionary definitions, while they don't use this term anchoring, they really are implying that it is the anchor material when they say things like inserting into wood. I don't see that. For example, maybe the Oxford English Dictionary says that the wood screw is fastening together parts of woodwork or wood and metal, so it does refer to metal. The McGraw-Hill Dictionary says it's for use in wood only. The academic press says that it's used for wood, but I don't see anything in any of those definitions that talk about insertion or anchoring. Instead, it's looking at both of the materials and determining what the screw is going through for both two materials. I don't see anything that emphasizes the anchor, for example, or inserting into wood. Yes, but if you look into the Webster's Dictionary, that one actually does use the term insertion, and I think that that is the one that I was referring to mostly when I was discussing it. What's the site for that? It's Webster's Third New International. It's a pointed metal screw formed with a sharp thread. Do you have an appendix site? I don't have an appendix site, too, but I do believe that it is cited in my brief, and I can't remember. We can pull up the brief right now. Can self-tapping screws be anchored in wood? It's the government's position that self-tapping screws cannot be anchored into wood. Okay, you're the one relying on the word anchored. Yes. So can these self-tapping screws be anchored in wood? Self-tapping screws cannot be anchored in wood. That's the government's position here, that a self-tapping screw is instead a type of screw that is designed to be anchored into non-resilient materials, so things like slate. Well, it's designed to be used in those materials, but it can be anchored in wood. I guess that there's a possibility for that. It would not be the proper use, I believe, of a self-tapping screw. Proper use is different from anchoring. I mean, I wouldn't say they're of the same... I believe that a self-tapping screw, yes, you may be able to use that in wood in some limited circumstances. I don't think that would be the ideal use of a self-tapping screw. We should look at something other than anchored in. Not necessarily. I think that the material that a screw... If you have a self-tapping screw that can screw itself into and cut its way into metal, are you saying it can't be anchored into wood? Can you rephrase the question, sir? I don't quite understand you. If a self-tapping screw can cut its way into metal, are you saying that that same screw cannot be anchored into wood? I would say that it would not be ideal to anchor that screw into wood. I can't say for certain whether or not it could or could not be used in wood under any circumstance, but there are certain physical characteristics of a screw that make it well-suited for wood. That includes a coarse pitch. That includes certain thread angles. I agree with that. Its use and its design. Those are the factors we should be looking at, not necessarily whether something can be anchored into something else. I think that it's a combination of both. You have to look. The government proposes these definitions that say you should look at the anchor material, but you should be looking at the design characteristics that allow a screw to be anchored into that type of material. The problem with defining wood screw and self-tapping screw based solely on a set of physical characteristics is that you need to have a little bit of latitude to allow improvements in wood screws to be defined under the term as well. If you're going to define something as wood screw is only something that has a gimlet point and coarse threading, if in the future, for whatever instance, there may be a new screw, it's probably well to be screwed into wood. But that's not what happened here, right? I thought that the Court of International Trade did consider the use and had that in its definition. I don't see where anything happened where only the characteristics of the screw were used to define whether it's a wood screw or a self-tapping screw. I agree. The first time this case came on appeal, the court had not examined use. Then it came on appeal. This court provided an opinion that said you should consider use. Then the court went down and said, I'm going to examine these various dictionary definitions and determine what the use of these two different types of provisions are. She came up with the definitions of a wood screw as a screw that can only be used to affix wood to wood, and then a self-tapping screw as a screw that can be used to affix non-resilient material to either wood or other non-resilient materials. Those definitions just are not tenable. If you look at the tariff scheme for screws generally, the term other wood screws is a tariff provision that falls directly under coach screws. A coach screw is defined in the explanatory notes as a type of wood screw. It is also defined as a screw that is used to attach metal railway lines to wooden sleepers. To the extent that the tariff considers a coach screw to be a wood screw, it would be untenable to say that a wood screw is only something that can attach wood to wood, because a coach screw is a wood screw that is designed specifically to attach metal to wood. You have this dichotomy there. The only definition that really meshes with this scheme generally is a screw that can be anchored into wood, when you don't look at the material that is actually being anchored to the wood itself. Can I ask you a slightly different question? Yes. This is just, I guess, more of a technical question. The distinction between cutting threads and forming threads, does that depend at least in part on the material through which the screw is being inserted? It seems to me that it might depend on whether the material can compress or not, at least partly. No, I would agree with that completely. When you have a non-resilient type of material, it doesn't have any elasticity, which is what the definition of a resilient material is. If you have something like sheet metal, you're not going to be able to compress that because it just doesn't compress. You're going to have to cut it. Instead, this distinction between thread forming and thread cutting, I really don't think is a distinction that the court really should have focused its analysis on. Here we have, everyone agrees that the screws are thread cutting in this instance, but the fact is... All screws? The what? That all screws are thread cutting? No, no, no. All the screws at issue in this case are thread cutting. I would never say that all screws are thread cutting. In fact, there are many different types of thread forming and thread cutting screws. These screws are thread cutting. However, the thread cutting is advertised and is used in fibrous materials. If you look at GRK's advertisements and their reference guides and things of that nature, they're always advertising the fact that their W-cut threads, which are described as saw blade-like, are to be used to cut through fibrous materials. Fibrous materials being wood. It's disingenuous to say that a screw cannot be a wood screw just because it has a cutting thread. The explanatory notes say that a wood screw can have a cutting thread, and that these cutting threads are explicitly made for the purpose of cutting through fibrous materials. Let me assume that we have time for another question from the side. Yes, thank you. Good morning, Your Honors. May it please the Court, my name is Craig Ziegler, and it's my privilege to represent GRK Canada in this appeal. The district, the lower court, the Court of International Trade, got it exactly right, did exactly what this court directed it to do. I'm persuaded by a lot of this stuff, but the thing I can't get by that I haven't seen a good answer to is the answer to the coach screw that your friend brought up. I think you, Dr. My definition is, isn't he right, that it would not be a wood screw under the CIT's definition? Well, I think the CIT's ... Well, coach screws are a type of wood screw, I'll grant you that. Okay. What the Court of International Trade was interpreting was the phrase other wood screws, so apart from coach screws. Coach screws, as I understand it, Your Honor, are used primarily to fix sleepers to railroad ties. It's a metal sleeper, but it has a pre-drilled hole, so the screw is not penetrating the metal sleeper to affix it to the wooden railroad tie. I think the difference here is that in the explanatory notes, in the definitions, a self-tapping screw is a specially hardened screw, which is able to, because of that, able to penetrate much harder and denser materials like plastic, sheet metal, slate, the other kinds of things, man-made materials that are not fibrous, not wood screws, not wood. I think the difference here, Your Honor, is that a self-tapping screw, because it is able to penetrate without use of a borehole, a separately drilled borehole, those hard and dense materials, that's what separates it from a wood screw and even a coach screw. The coach screw itself does not penetrate that metal. It's anchored in wood, and many times the self-tapping screws may be anchored in wood, but that's not the defining difference, Your Honor. As Judge Prost put out, none of the definitions talk about where the material is being anchored in, where the screw is being anchored in. That's not a limiting factor in any of the by the ANSI and ASME, and it's not in the explanatory notes either. Whether the screw is anchored in wood or something else is immaterial, because it's still got to connect two different things. That's what a fastener does. It connects one thing to another, and it's got to penetrate the hard and dense materials, the slate, the sheet metal, the man-made materials, before it can actually get in to anchor anything. The other thing about anchoring, Your Honors, is that it's undisputed that drywall screws, the Customs Service classifies them as self-tapping screws. Drywall screws are oftentimes anchored in wood, but they're oftentimes anchored in metal. In commercial construction situations, frequently you have metal studs, not wooden studs, that drywall is being anchored into. The Customs Bureau concedes that those are self-tapping screws, even if they're anchored in wood. The anchoring is not supported anywhere in any of the authoritative sources of meaning that the courts are supposed to look at to figure out what the interpretation of the draft terms really is. The District Court here, the Court of International Trade, did a well-established precedent by this court. It's got to figure out what the common and commercial meanings of the tariff terms are, by looking to figure out how it's used in the real world. You look at dictionary definitions, all the dictionary definitions say wood screws are used only in wood, while that limitation does not appear in definitions of self-tapping screws. The difference between self-tapping screws is what they can penetrate, not what they're anchored in. Clearly, the District Court got that right. This definition, and again, on the thread-forming, thread-cutting distinction. If you look at the standards published by ANSI and ASME, they talk about only thread-cutting screws are self-tapping screws. If it's a thread-forming screw, it's necessarily a wood screw. Because with wood, because it's a fibrous material made of plant cells, which are squishy to some degree, a thread-forming screw can make its way into that material by compressing the material, by shoving it aside and compressing it. You can't do that if you have a hard and dense material like sheet metal or plastics. You have to be able to cut your way through. That's the distinction that the standards show. If it's a thread-cutting screw, it's necessarily a self-tapping screw. The District Court incorporated those concepts from the definitions, from the explanatory notes, from the standards, from the expert testimony that's out there, and got it exactly right, Your Honors. Unless you have other questions, I'm prepared to close. Thank you, Your Honors. I just wanted to address a few points that my opposing counsel brought up. The first one is this notion of pre-drilling and whether a borehole is needed in order for a screw to be entered into it. None of the definitions define a self-tapping screw as something that can be self-drilling. There's also no definition that says that a wood screw necessarily needs to be self-drilling or not. This is not a distinction that really separates the two. I think that it gets confused in common parlance. The definition of a tapping screw is something that creates its own threads into a material. Oftentimes, a self-tapping screw will need a borehole. When it has a borehole, it will create its own threads within that borehole, but it doesn't necessarily self-drill. The same thing can be said of a wood screw. It's going to create threads in a piece of wood. This distinction between needing something that's self-drilling versus not self-drilling is really not a distinction that I think the court should really take into account in defining these terms. Whether a screw is strong enough to pierce through certain harder materials such as metal or slate and things of that instance should not make a screw not a wood screw. If it is intended to be set into wood and it has physical characteristics— If it were intended to be set into metal and wood, you're only really going to have one anchor material in that instance, correct? Are you saying if wood was attached to metal in that instance? Your position really is going to have to rest on this anchoring idea. It really would be on the anchoring idea, right? I think that it rests on that because of the structure of the screw. You have a screw. The bottom two-thirds are threaded. The material that this is creating a thread in is going to be the anchor material. That's the real crux of this and really why the government's position is that you have to look at the anchor material. That in connection with the tariff term itself, as we talked about, coach screws cannot be considered a wood screw under the trial court's definitions. GRK's representative also admitted in their deposition that there's no such thing as a wood screw anymore, that that is an outdated reference to something that just does not exist and is not on the market. To the extent that this court were to ratify the lower court's decision and say that a wood screw is only this type of screw that can affix wood to wood, you're basically saying that there is now this tariff classification out there for something that doesn't exist anymore and is not on the market. Every screw that we have on the market today has the ability to affix some non-resilient material to wood. That is just the reality of the marketplace today when it comes to screws. But isn't that, I mean, just on that point, generally, outside of this case, that happens, right? I mean, the tariff classifications, things change and some products that are covered under tariff classifications that were created 5, 10, 15 years ago don't exist anymore, right? Correct. I have five seconds. Will you allow me to answer the question? No, please. Okay. Yes, I agree. There are certain things that become outdated. However, to the same extent, tariff provisions are construed to cover evolutions in certain products. So here, if a screw is still intended to be used in wood, even if it can't be used in other instances for non-wood-to-wood applications, it would still be covered by this provision, other wood screws. And I think that the fact that it's still out there and is still a tariff provision and Congress has not taken out of the tariff provisions generally, would indicate that this still should have some sort of meaning. Thank you. Thank you. We thank both sides. The case is submitted. That concludes our proceedings for this morning. All rise.